Jacob Markowitz, J.
Motion to settle an account wherein the successor trustee also requests construction of certain provisions of the original trust indenture and the efficacy upon it of two subsequently executed instruments.
The settlor in 1895, along with other provisions for the inter vivos distribution of her property, created a trust naming herself as life beneficiary, and one of her daughters successor life beneficiary. Upon the death of the survivor of them, $8,000 of the corpus was to be distributed among the settlor’s children or the surviving issue of each of them, with the income from the balance going to the surviving issue of the afore-mentioned daughter who have not reached 25 years of age, and the corpus distributed to such issue after 25. Two sons of the settlor *147 were named trustees and power was given them to name their successors.
The settlor died in 1902 and thereafter her daughter received the net income from the trust. In 1916 a new instrument was drawn whereby an attempt was made to change the 1895 document by creating upon the death of the then current life beneficiary, a succeeding life interest in her only child, a daughter then over the age of 25. (It should be noted that under the original trust, the latter if she survived her mother and being over 25 would be entitled to the entire corpus.) It also provided for the latter to have a power of appointinent over the corpus, and in default of her use thereof the distribution of the corpus was to be made to her issue, and in default of such issue to the children of the original settlor or their surviving issue per stirpes. By this document also, two of the said children of the original settlor waived their undivided interest in the $8,000 mentioned in the original indenture. Provision was made for the appointment of an Illinois bank as successor trustee in the event the then trustees could no longer act or refused to do so. The trustees, the other children of the settlor, the then life beneficiary and her daughter all joined in this document.
In 1923, after the death of one of the trustees, the successor trustee wishing to resign, and upon the refusal of the successor trustee named in the 1916 instrument to serve, a new document was drawn naming as trustee a New York bank, the petitioner herein. This final document was signed by the surviving trustee and the life beneficiary (both of whom were the only surviving children of the settlor), the daughter of the life beneficiary, and the surviving issue of the deceased children of the settlor, one of whom was an adopted daughter.
In 1957 the life beneficiary under the 1895 instrument died, thus terminating the trust unless as it was affected by the subsequent documents. Her daughter survives.
The 1895 indenture was clearly executed in Ohio. It is unclear as to where the other documents were executed, although there is some ambiguous reference in the 1916 document to the laws of Illinois.
Petitioner requests to be advised as to the following:
(a) Whether the $8,000 provided for in the 1895 trust is distributable to the issue of the settlor, other than the issue of the daughter who succeeded the settlor as life beneficiary, and whether such issue includes the afore-mentioned adopted daughter of one of the settlor’s children;
*148 (b) whether such distribution should be made per stirpes or per capita;
(e) the effect, if any, of the 1916 assignment by two of settlor’s children of their respective interest in the said $8,000; and
(d) whether the balance of the corpus should be distributed to the surviving child of the settlor’s succeeding life beneficiary under the 1895 trust, or to the petitioner as trustee or to any other trustee.
To dispose of the • questions raised, the validity of each instrument must first be determined.
The 1895 instrument must be interpreted in light of the laws of Ohio, that being the situs of the property and domicile of the settlor at the time of the execution of the trust (Restatement, Conflict of Laws, § 296; Hutchison v. Ross, 262 N. Y. 381). Applying Ohio law to the trust herein, which consisted entirely of personalty, it is clear that it is valid under both present statutes and Ohio law as it existed at the time of its creation (see Page’s Ohio Rev. Code, § 2131.08; Page’s Ohio Gen. Code, § 10512-8, and comment thereunder pointing out that an earlier abrogation, since repealed, of the common-law Rule against Perpetuities did not apply to estates of personalty).
The 1916 modification of the trust, however, must be deemed invalid, except insofar as it designated a successor trustee. However, it was of no consequence even to that extent, inasmuch as the designated trustee refused to act. It is a general rule, absent a contrary provision in the document, that after a trust is executed and in force it cannot be altered or amended without the consent of all parties in interest (54 Am. Jur., Trusts, § 68). The gift herein was to a life tenant, then income to her issue until age 25 when they would be entitled to the principal, but upon failure of such issue, to the children of the settlor or their surviving issue. It is clear that since the life tenant was alive at the making of this instrument, those entitled to share in the remainder could not be ascertained. Only upon her death could all the beneficiaries be determined. So long as there remained a possibility that contingent interests might vest, the trust was incapable of modification (3 Scott, Trusts, § 340; cf. Restatement, Trusts, § 340, comment e). This is true whether Ohio or Illinois law is applied (Long v. Cleveland Trust Co., 44 Ohio Opns. 177; Tree v. Rives 347 Ill. App. 358) axxd is applicable to the attempted assignments of the contingent iixterests therein as well as the other modifications. Accordingly, the 1916 agreement, except for the appointment of a successor trustee, was ineffective for all purposes, inclusive of the attempted assignment by two of the settlor’s children.
*149 The 1923 document merely names a successor beneficiary, a power given to the trustee by the original trust indenture. The other parties to that agreement as well as to the 1916 agreement were not necessary for the purpose of designating a successor trustee. Therefore, this instrument is valid.
It would thus appear that distribution of the trust estate should be made in accordance with the settlor’s original intention, to wit, the principal less $8,000 to be paid to the surviving daughter of the life tenant who died in 1957.
"With respect to the $8,000, the trust instrument provides as follows: “They (the trustees) shall pay to me during my natural life, the entire interest or income arising from said property, and after my death they shall pay the income or interest thereof, for her care, maintenance or comfort, to my said daughter Clara- and after her death and mine they shall distribute among my children to each one, share and share alike, or, in ease of the death of any of my children to their respective surviving issue, eight thousand dollars ($8000.) * * * and pay over the interest or income of the remainder thereof to any issue of my daughter Clara surviving her, until such issue shall have arrived at the age of Twenty five years (25) when the said remaining principal shall be paid to such issue ’ ’.
It is axiomatic that in the case of a trust based on a written instrument, the settlor’s intention is to be ascertained from the language thereof as interpreted in light of all the circumstances surrounding the creation of the trust (Restatement, Trusts, § 164, comment e). Reading the trust document as a whole, it is readily seen that the settlor, after making conditional gifts to certain of her children, and providing for her own support during her lifetime, seeks to invest her daughter with a life income ‘ ‘ free and separate from any right to, interest in, claim or control over the same by her husband”. The remainder interest is given to the issue of the said daughter. She then directs the payment of $8,000 to her other children or their issue only after both she and the said daughter are no longer living. Having already substantially provided for the issue of that daughter, it must be assumed that since the latter could never have become entitled to any interest in the $8,000, her issue likewise cannot share in this fund.
As to whether the adopted child of settlor’s other daughter may share in this fund, Ohio since 1932 has permitted inheritance collaterally through as well as from the adopting parent (Page’s Ohio Rev. Code, § 3107.13). However, this was not the law in 1895 when this instrument was drawn. In determining which statutory provision must be applied, the Supreme Court of Ohio, *150 in upholding a lower court decision in a ease such as this, has ruled that the laws in force at the time of the death of the life tenant controls as to whether an adopted child qualifies to share in the principal (Tiedtke v. Tiedtke, 91 Ohio App. 442, affd. 157 Ohio St. 554). That being the case, the adopted child herein must be held to be entitled to a share of the $8,000 to be distributed.
No direction is given in the 1895 instrument as to whether upon the failure of any settlor’s children to survive the life tenant the distribution is to be per capita or per stirpes. A per stirpital intention might be imputed from the gift over in case of death “ to their respective surviving issue ”, since the use of the term “ respective ” has been held to be indicative of such a distribution. (See Matter of Derby, 13 N. J. Misc. 562.) In any event, it appears that in cases of gifts over to surviving issue, Ohio favors stirpital distribution (Watson v. Watson, 34 Ohio App. 311).
In view of the fact that the events terminating the 1895 trust have occurred, the trustee, therefore, should be directed (1) to pay the corpus less $8,000 to the surviving daughter of the life tenant, Ida Hoerner Dittoe; (2) distribute' the $8,000 to the surviving issue of the settlor’s children other than the life tenant on a per stirpital basis; and (3) to include in such per stirpital distribution, the adopted child of settlor’s daughter.
Accordingly, petitioner’s application for judicial settlement of its final account as successor trustee covering a 35-year period is approved. The commissions heretofore paid the trustee are approved. The fees allocated to the trustee’s counsel are allowed and approved.
The fees of the guardian ad litem will be fixed in the order to be settled herein.
Settle order.